court. I represent the defendant appellant. I would like to begin by briefly talking about the Fletcher case which was decided after this case was fully briefed and in which Judge Colleton was on the panel. I apologize that I only discovered the Fletcher case last night while I was prepping for this argument. I do have a copy for you. There are three differences I would like to emphasize between the Fletcher case and this case. The first one which I really think is key is the difference between the peer-to-peer software that was involved. Fletcher was BitTorrent. In this case, it's Ares. Now, the Fletcher case described the BitTorrent as a program that, quote, tells the user how to accept the default or to change the settings so that the program's contents cannot be accessed by other BitTorrent users. And it cited an 11th Circuit case called Schaefer which discussed a similar peer-to-peer software called Kazaa. Now, the Ares is different from that. The Carroll case in the 11th Circuit found, based on the testimony of a government witness, that users of Ares are not prompted or notified during the installation or otherwise to choose whether or not to share files. And the Carroll court also cited Schaefer, and it specifically distinguished Schaefer and said that Ares doesn't have this feature. So it may be reasonable to presume knowledge in part of a user of BitTorrent, but not on the part of a user of Ares, which does not have a feature that notifies the user of this property. Why would that have been ineffective assistance of counsel to not have gone into the distinctions of these softwares? Well, Your Honor, this court in Durham made clear that if a defendant can produce knowledge that he did not know, evidence that he did not know. Particularly when there's a confession, as we have here, essentially, or admission of the downloading. Well, first of all, our argument, I mean, we're contending that that was not actually an admission. This was something that was buried in a lengthy factual recitation by another person. It was not called to Mr. Haney's attention during the plea colloquy. And in the 2255 motion. What do you mean it wasn't called to his attention during the plea colloquy? Wasn't it read out loud? It was read out loud, and it was a lengthy factual recitation. Yeah. And the point about downloading was buried in the middle of it. In the 2255 context, it's not only, you know, he presents not only his own declaration, but the declarations of his mother and his daughter, who obviously are not bound by any plea colloquy. But aside from that, even if this court were to find that he admitted downloading the ARI software, the Carroll Court, discussing this very same software, said that the installation process does not prompt the user that he is sharing thoughts. Back to my question, why is it ineffective assistance of counsel for his lawyer not to have, what did his lawyer not do that would have, that caused him to suffer a constitutional deprivation? Well, his lawyer was provided with information that could have been presented to the court to make the showing required under Durham. No downloads, I mean, no uploads, that is. The only evidence here was that he downloaded files, which is a distinction made both in Durham and in Carroll, that downloading is the default, you know, the basic feature. Anybody can download. It doesn't show that you know the, more than a rudimentary knowledge of the program. There's no evidence of, he could have shown that he's not technically sophisticated. He doesn't make, he didn't make any changes to the default settings of this program. He didn't use any kind of blockers or additional software. There's no, he could have shown he was not technically educated. He certainly could have shown that he never made any admissions of knowing how this software worked. And again, he could have presented, he could have presented the sentencing court with precisely the information that the Carroll case found that the area software does not by its nature prompt the users with this knowledge. And what I find significant is that Mr. Wampler, the plea and sentencing counsel, provided an affidavit in opposition to the motion. But he only disputed the contentions regarding the notice of appeal. He did not dispute that he was presented with information concerning the lack of knowledge of the peer-to-peer file sharing properties. And he did not, in fact, dispute the veracity of that information. So I would submit there's, at the very least, issues of fact here requiring a hearing on the ineffective assistance issue concerning what Mr. Wampler was informed of and what he could have presented to the court. And keep in mind also in terms of prejudice, we're talking about only a reasonable probability standard. He didn't object to the PSR statements, is that correct? Yes, that was part and parcel. And those included that shares occurred where individuals went on to his computer and pulled and downloaded files from his computer? Yes, those files were automatically made available by the default setting. The fact that shares occurred does not mean that he knew that shares occurred, which again is a distinction made in Durham, made in Carroll, made in the case law of many other circuits that have considered that issue. There's not a strict liability standard where if people download, you're on the hook for the enhancement whether you knew it or not. The government has to prove that there was some knowledge that this downloading was going on. Fletcher, Durham, I mean there seem to be cases going a lot of ways. To get back to the Chief's original question, is counsel necessarily ineffective for failing to raise the argument? Could counsel, for example, just decided, you know, there's cases going both ways, it might be a loser argument. And he obviously had better arguments because there were some arguments that were actually winners at sentencing. I think, well first of all, Your Honor, I think there is a reasonable probability that this argument too would be a winner. And sentencing is cumulative. I mean, the more you win, the lower the sentence gets. I mean, if you win on two issues, you do better than if you win on one. But again, I would submit at the very least this requires a factual hearing because we don't know why counsel withdrew that objection. He didn't dispute it. Isn't it an objective standard though as to whether counsel acted reasonably? And I think our cases say that, but let's assume that for a second. Wouldn't it have been objectively reasonable for the lawyer to say there was risk involved with pressing this argument because I have to retract what my client said in the plea colloquy or acknowledged in the plea colloquy. There's a reasonable chance the judge therefore won't believe it. I might put acceptance of responsibility at risk or even obstruction, and I've got a good variance argument that ends up getting me a 25% reduction as I understand it. If you look at it in the whole picture, was it objectively reasonable for counsel to proceed as he did and get the big variance? I think that counsel could have made that argument without contradicting the plea colloquy. How could he do that if the plea colloquy says I downloaded it and the affidavits that you proffer are going to say I didn't download it? Well, I think that he could have made the argument that was found meritorious and caroling. He could have said, judge, whether or not he downloaded it, this download is not prompt. Well, he could have made that, but that's not the argument you're suggesting he should have made. You're suggesting he should have put on evidence that he did not download it. Isn't that right? That's right, judge, although actually the bottom line is he should have put evidence to support or to oppose this enhancement. That could have been didn't download. That could have been doesn't matter if he downloaded. That could have been the numerous other factors we've cited. But he would have had legal reasons not to do so or reasonable reasons because of the arrangement that was being made with the plea. Judge, the case law on acceptance of responsibility, and I can provide briefing on that if you want, and I believe it's actually written right into the application note, acceptance of responsibility does not require admitting relevant conduct to the crime. Therefore, I don't think that contesting the issue of who downloaded the software would have implicated his acceptance of responsibility. He's not disputing that he downloaded the images. He's not disputing that he possessed the images. He's not trying to go back on his plea or negate any of the elements of the crime. So, Your Honor, I do not think there would have been a downside risk here. I think that, you know, as in the Mack case cited in the reply brief, even if there's varying case law, there was a very good argument for Mr. Haney that his lack of knowledge falls within Durham. If that argument would have been grounded in case law, if that argument would have been successful, he would have been entitled to strike a two-level enhancement and then a concomitant two-level reduction. I want to ask you about the reduction. So I understand your plain text argument on the enhancement, but the reduction I'm having trouble with because it seems to have both a conduct and a separate intent requirement. So basically the reduction is limited to the receipt or solicitation of child pornography, and that's the conduct that's described. And then there's a separate intent requirement. But the problem I'm having with it is your client committed that conduct knowingly or unknowingly, and so the way that is phrased, I don't think he gets the reduction no matter whether you succeed on your argument or not. Well, what I would submit, Judge, is he didn't commit that conduct. The program committed that conduct. Yes, his conduct. He didn't share. As a matter of fact, he didn't share child pornography with others. The program did that without his input. What he did was download and receive images. He didn't share them. The program shared them. Were they on his hard drive or his computer? I don't know whether they were on a hard drive or whether they were simply downloaded into a folder on the peer-to-peer software, but there was certainly no conscious voluntary act on his part, no conduct by which he shared them. So, anyway, I've cut into my rebuttal time, so if the Court has no further questions, I'll reserve. Thank you, Mr. Edelstein. Mr. Kelleher. Thank you, Your Honor. Good morning. May it please the Court. The threshold issue before the Court is whether Mr. Wampler's withdrawal of his objection to the guideline enhancements associated with distributing child pornography was objectively unreasonable. Now, we begin with the context of Mr. Haney's use of peer-to-peer file-sharing software. The mere fact that he used software that has in its title sharing creates something of a burden for Mr. Haney. That burden is made significantly higher by the fact that, during the change of plea colloquy, he acknowledged, at least tacitly, that he was the one who installed this program on his computer. Now, Mr. Edelstein makes reference to the fact that this was a lengthy plea colloquy. I went through last night and actually recited the factual basis. It took me less than two minutes to recite the entire factual basis for this guilty plea. I know Durham talks about installation, but what does installation have to do with anything unless installation indicates to you somehow that there's a sharing feature and that you have to turn it off? Well, I think the important thing to know when you install a program that is entitled peer-to-peer file-sharing system, it's awfully difficult to argue that you didn't know, at least generally, that files were shared through the use of this program. How do you know about the title? Well, I think Ares is a peer-to-peer file-sharing system. I mean, that's what it's called. But, I mean, you say he knew about the title and, therefore, he knew it was a file-sharing system? If he installed the software, he knew what the title of the software was. I don't think there's any way really to get around that. I don't know. How do you install it? Well, you need to download it from the Internet and install it on your computer. And is there evidence that when you download it, it says it's a file-sharing system? Again, I haven't looked at a screenshot, and I know that that's not in the record since the record didn't need to be developed, but I am pretty sure that is the case. Well, what if you accept the affidavits as true, though, from Kunrad and Gentry? If we accept the affidavits as true. Why wouldn't that be right in the heartland of Durham, such that he had a good argument for the two- or four-level differential? If we accept those as true, which, again, I think is a leap, and I'll come back to that argument, another argument in a second, but even if we accept those as true, what Mr. Haney would essentially have to establish is that even though somebody else installed this program on the computer, he didn't understand or recognize that files could be shared by using this program. And if there had been a hearing, I'm fairly confident that the forensic expert who examined his computers would be able to establish that given where these files were stored, how the program was used by Mr. Haney to download child pornography, it would be abundantly clear to the user that file-sharing was enabled and, in fact, files were shared. But, again, I don't think that the record... But that's not in the record at this point. It's not. Because there was no hearing. That is correct. So do we need a hearing for you to show that? I don't think so, Your Honor, because, again, we're dealing with the withdrawal of the objection. We're not dealing with just an oversight or negligence on the part of Mr. Wampler not identifying this issue. The objection was made but later withdrawn. And I think it's important to note that in order to establish that Mr. Haney's daughter was the person responsible for downloading or installing this program, she would have been called to the witness stand. And I don't know if the court has read the sentencing transcript, but Mr. Haney came to the attention of law enforcement in 2008 by virtue of the very same daughter making a complaint about him showing her child pornography on the computer. Now, as a defense attorney, I think that it probably would be prudent to keep such a witness as far away from the witness stand during the sentencing hearing as possible. Clearly, if she were called to the stand to attest to the fact that she installed this software, I think she could have also been questioned about that initial incident in 2008. Maybe he could have just called the mother and put in the affidavit of the daughter. And, again, that would be a credibility call on the part of the court. And, again, I think you do have this substantial burden of overcoming the fact that you're using what is called the file sharing system and not knowing about the sharing. So, again, we get into, and, again, we get into, well, my client, again, at least tacitly acknowledged installing this during the change of plea hearing. Do I want to undermine his credibility by attacking this particular guideline provision? After all, it's a two-level increase, whereas the rest of my argument, and, again, I think that carried the day, ultimately, for Mr. Wampler, is certainly more compelling. You know, frankly, when you look at the distribution enhancement, the damage isn't done by the fact that you make these programs or these files available. It's the fact that they're actually being distributed to the wider world of child pornographers, and that is precisely what happened. So the damage was done whether he did so intentionally or not. On the file sharing point that Judge Colleton was asking about, you know, some of these programs in general are really complicated. We have IT people that help us figure out what they do and what things you need to turn on and turn off for security purposes and things like that. So is there a difference where it doesn't tell you whether you opt in or opt out of sharing? In other words, some of these prior cases have talked about the fact that it makes it clear on one of those introductory screens that you need to click opt out and say, I don't want to do it. Here we don't have that, apparently. Does that make a difference? Obviously, it would be stronger evidence if you did have to opt in or opt out. And to be perfectly honest, I don't know if that's the case with Aries, and it's certainly not in the record. So I don't even want to speculate on that. But again, you start out with the proposition that you're using a file sharing system. And I think as the sentencing judge, you're going to view that, especially with a person who had been downloading child pornography as long as Mr. Ainey had, that, well, how do you not know what's going on? How long? What's the record say? I think it's four, five years. And then we go all the way back to 2006. I thought he just got out of state prison. What do you mean he was using it before? Well, in 2006 his daughter reported him for having child pornography on his computer. And then he gets out of prison in 2010, and the search warrant was executed, I believe, in 2013. So you're looking at approximately three years between 2010 and 2013. But going back before his term of imprisonment, we have the first report of child pornography in 2006. And I would point out that Judge Ketchum There's no evidence about a file sharing program. No, no, no. The Joplin Police Department didn't. Do you have evidence that he was downloading since 2010, the file sharing program? Or what is the plea about? I thought it was closer in time to the seizure. I believe that his daughter's affidavit indicated, and, again, if we're to believe that, I think she indicated that she installed it shortly after he was released from prison. And, again, I could be incorrect on that. You could be. But going back to the credibility issue, and I believe Judge Colleton talked about the possibility of losing acceptance of responsibility. Judge Ketchum, during the sentencing hearing, expressly said, I don't believe you didn't know what you were doing. So that, at least, I think to further antagonize the district court judge, who was already dubious of this claim, that he was unaware of the fact that he was sharing. When was that conversation? That was during the sentencing hearing. That was after, though, that he had withdrawn the... That is correct. That would be powerful evidence if it was, obviously, before he had withdrawn that particular argument. I could see, then, why there would be, hey, I don't want to antagonize the judge here. Plus, she didn't have these affidavits at the time. That is true. Although, obviously, Mr. Wampler obviously knew that this was in play. And, again, looking at the record, we know that he actually obtained the services of a forensic computer expert to assist him in this case. How would pursuing this argument have jeopardized the variance, if at all? Or was the variance independent? The arguments for the variance independent of these guidelines? Again, it depends on how precisely Mr. Wampler approached this. But, again, I think calling Mr. Haney's daughter to the witness stand was perilous at best. The fact that he has, by claiming that he allowed his daughter access to a computer that he was using to access and download child pornography, I think is probably not something that I would want admitted before the court. I think contradicting his statement or his acknowledgement that he was the one who downloaded this program would have hurt him. So attacking this two-level increase, and, again, we're looking at tactics. There's a possibility that the involvement of his daughter would hurt him. There's a possibility that his credibility would be damaged. And, ultimately, there's a possibility, depending on how the forensic experts testified, that he could ultimately lose credit for acceptance of responsibility for frivolously contesting relevant conduct. So those are all the issues of the variance theory. Could the judge articulate? I thought she mentioned his criminal history, but I can't remember exactly. The fact of the matter is, when we were arguing this case, Mr. Haney's guideline sentence was at or near the statutory maximum. And I pointed out during my argument to the court that, frankly, the guidelines were not particularly helpful in his case because we do have and we do see numerous individuals who've had hands-on contact with live children. We have seen more egregious cases than what Mr. Haney had committed. And the court ultimately agreed with that assessment, and that was the reason for her variance. This is not a traditional, what I would call a true variance from the guidelines. That is, there are numerous judges in this district who take issue with the two-level increase for use of a computer, because we see that in every case. They take issue with the number of image enhancement because almost all of the individuals engaged in child pornography have over 600 images, which results in a five-level increase. So earlier this week, I had a sentencing hearing with Judge Harpole down in Springfield, and he always says, I'm not going to consider the two-level increase for having a computer because that's just the way people obtain child pornography, and I don't find that helpful. On the prejudice point, you're kind of touching on this a little bit about the variance and things like that. There's a lot of cases, not in the ineffective assistance of counsel context, but otherwise, where it says that even if it's below guidelines, starting with the right sentencing guidelines range is important for prejudice purposes, and we're not going to presume that just because it's below guidelines, changing the starting point doesn't matter. Do you agree that the prejudice argument here is pretty weak, or how would you distinguish those cases? Well, I think the lead case in that regard is Molina Martinez. Correct, yeah. And in that case, it was a direct appeal of, I believe, an immigration case, where the United States probation, the district court, defense attorney, and the prosecutor all missed what the guidelines truly were. It went up on appeal, I believe, as an Anders brief. I believe the defendant supplemented the brief with his argument that they got the guidelines wrong, and ultimately the Supreme Court, in interpreting Federal Rule of Criminal Procedure 52B, concluded that where the guidelines are the focal point of the sentence, that a person is prejudiced even if the resulting guideline that was imposed falls within the new guideline range of imprisonment. And quite clearly in Molina Martinez, the court was relying on the guidelines. The district court imposed a sentence that was at the low end of the guidelines. There were really no other reasons given for imposing that sentence. Whereas here, the guidelines really didn't come into play. And in fact, in Molina Martinez, the court points out, there may be instances when, despite application of an erroneous guidelines range, reasonable probability of prejudice does not exist. And I would submit to the court that we're in that realm. The district court ever said, you know what, regardless of the guidelines, this is the right sentence. This is the sentence I would have imposed regardless of what the guidelines said. Unfortunately, the district court did not do that. Obviously, that would have been our lead argument, because I think we would have been dealing with harmless error. But unfortunately, that did not occur. But I think we can discern from the record, the sentencing record, that the sentencing guidelines were of little or no importance. And I think at the end of the day, when we look at the tactics of Mr. Wampler in not pursuing this particular argument, which may very well have failed and may very well have been disastrous for his client, ultimately his argument, his focus during the sentencing hearing won the day. This was a significant downward variance from the guidelines. Mr. Haney was looking at 20 years as a guideline sentence, and he received 15. I think to attack Mr. Wampler's tactics, and that's what is occurring today, I think is unwise. I think it should be very difficult for us to go back, look at what was going through his mind on the morning of the sentencing hearing, and say, well, I would have done it differently, and the result would have been better. Because I don't know if that can be said. I don't believe I have any further remarks for the court, unless there are any further questions. I will leave the podium. Thank you. Briefly, Your Honors, I would like to start with a couple of things in the sentencing colloquy. On page 111 of the record, where Judge Ketchmark says, and so the implication that he didn't fully understand what he was getting into, I'm not buying. That takes place at the end of the paragraph where the judge is talking about possession and downloading of child pornography. That's the context of what she says that he knew he was doing. There's nothing in that remark, and again, it takes place after, as the court pointed out, after all the objections were withdrawn. But there's nothing in it in any event that says that where she is finding that he knew he was sharing. Now, also, what government counsel said regarding, well, maybe he doesn't want to bring this information before the court. Well, it's already before the court that this is a peer-to-peer program, and that files were downloaded from it. And, in fact, Mr. Wampler mentioned that. Page 101 of the record, lines 22 to 23, says, yes, to some extent, if he's on a file sharing, then he's hooked for distribution. So it would have gone, it wouldn't have made things any worse. It couldn't have made things any worse for him to present the evidence that, yes, the file sharing was going on, but there's no evidence here that Mr. Haney knew of it. And I would point out again that sentencing arguments are not zero-sum. I mean, if you've got two compelling arguments, you don't just make one and rest on your laurels, because you want to go as far as you can in reducing the sentence for your client. The title of the software, it's Aries Galaxy. I mean, there's nothing in the record indicating that the title had the word sharing in it or that something in the title clued in every user that the default was to share files with the public. And, in fact, the Carroll Court made the contrary finding. And so I would submit that all things considered, actually, no, one more thing, finally. I will reiterate that Mr. Wampler had an opportunity to explain what was in his mind. He made an affidavit in opposition to the 2255 motion. If he had decided to withdraw the objection because he consulted with a computer expert and it looked bad or because there was some admission in the record, he could have said that. He didn't. So I would submit that, at the very least, we need a hearing to determine whether, as a matter of fact, there was ineffective assistance in this case. I'm out of time, Your Honor, so I'll rest on my laurels. Thank you, Mr. Edelstein. Thank you also, Mr. Kelleher. We appreciate counsel's arguments to the court today. We will take the case under advisement.